

I N   T H E

# Court of Appeals of Indiana

Carey Lee Fleener, Jr.,

*Appellant-Defendant*



v.

State of Indiana,

*Appellee-Plaintiff*



July 15, 2026

Court of Appeals Case No.
25A-CR-2776

Appeal from the Marion Superior Court

The Honorable Marie L. Kern, Judge

The Honorable Heather M. Dean-Barton, Magistrate

Trial Court Cause No.
49D28-2505-F5-16520

**Opinion by Chief Judge Tavitas**
Judges Weissmann and Foley concur.

**Tavitas, Chief Judge.**

## Case Summary

[1] Carey Fleener, Jr., appeals his convictions for criminal confinement, a Level 5 felony, and domestic battery, a Level 6 felony. We affirm Fleener's conviction for criminal confinement but reverse his conviction for domestic battery on substantive double jeopardy grounds and remand with instructions that the conviction and sentence on that count be vacated.

## Issues

[2] Fleener presents two issues, which we restate as:

      I. Whether the State presented sufficient evidence to support Fleener's conviction for criminal confinement.

      II. Whether Fleener's convictions for both criminal confinement and domestic battery constitute substantive double jeopardy.

## Facts

[3] Fleener is the former fiancé of Donnette Swift and the father of the youngest of Swift's three minor children. Fleener moved into Swift's home in November 2024. Fleener and Swift were engaged, but Fleener broke off the engagement in May 2025.

[4] On the morning of May 23, 2025, Swift took her oldest child to school and came back home. She then looked through Fleener's phone and found text messages between Fleener and another woman. Upset by her discovery, Swift

asked Fleener to move out of her house, but he refused. When Swift stated that she would evict Fleener, he threatened to stop supporting her financially. Swift responded that she would find someone else to support her, and the two began to yell at each other. Swift's two younger children were present during the argument.

[5] At some point during the argument, Swift took out her cell phone, and Fleener took the phone from her and threw it against the wall. Swift then walked to the front door to leave, but Fleener stood in the doorway and told Swift that she could not leave. When Swift tried to move past Fleener, he shoved her backward. The two then continued their argument, walking around the home and yelling at each other. Swift eventually walked toward her bedroom. Fleener again stood in the doorway and blocked Swift's path. Swift's middle child came out of her room, cried, and held onto Swift's leg. Swift asked Fleener to calm down, but he continued to yell.

[6] As the argument continued, Swift went to the front of the house and attempted to exit via a window; she opened the window, kicked the screen out, and screamed for help. Fleener then grabbed Swift's hair and shirt collar from behind, dragged her away from the window, and threw her onto the floor. This caused Swift pain and left a red mark on her neck. Swift stood up and told Fleener to stop, but he continued to yell at Swift. Swift then took the children into a bedroom and locked the door. Swift used her child's iPad to send a message to a friend, asking him to "send help." Tr. Vol. II p. 18. That friend then called the police.

[7] Fleener received an alert on his phone notifying him that the police had been dispatched to the area. He, therefore, knocked on the door and asked Swift to fix her hair and come out. Swift gathered her children and came out of the bedroom, walked past Fleener, and went out the front door. She then fled to her father's house, but she returned when the police arrived and reported what had happened. Fleener fled the scene before the police arrived. He was, however, wearing an electronic ankle monitor,[1] which enabled the police to locate him at a convenience store.

[8] On May 27, 2025, the State charged Fleener with: Count I, criminal confinement, a Level 5 felony; Count II, domestic battery, a Level 6 felony; Count III, battery resulting in bodily injury, a Class A misdemeanor; and Count IV, criminal mischief, a Class B misdemeanor. A bench trial was held on September 26, 2025, at which the trial court found Fleener guilty as charged. At sentencing on October 10, 2025, the trial court vacated the conviction on Count III due to double jeopardy concerns and entered judgment of conviction on the remaining charges. The court then sentenced Fleener as follows: Count I, three years in the Department of Correction; Count II, a consecutive two-year sentence to be executed on community corrections work release; and Count IV, sixty days to be served concurrently with Count II. Fleener now appeals.

---

[1] Fleener was on home detention at the time.

# Discussion and Decision

## I. Sufficiency of the Evidence

[9] Fleener first claims that the State failed to present sufficient evidence to support his conviction for criminal confinement. Sufficiency of the evidence claims warrant a deferential standard of review in which we "neither reweigh the evidence nor judge witness credibility, instead reserving those matters to the province of the [fact-finder]." *Hancz-Barron v. State*, 235 N.E.3d 1237, 1244 (Ind. 2024). A conviction is supported by sufficient evidence if "there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Id.* In conducting this review, we consider only the evidence that supports the fact-finder's determination, not evidence that might undermine it. *Id.* It is not necessary that the evidence overcome every reasonable hypothesis of innocence; instead, the evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007).

[10] To convict Fleener of criminal confinement, the State had to prove that he "knowingly or intentionally confine[d] another person without the other person's consent." Ind. Code § 35-42-3-3(a). The offense is elevated to a Level 5 felony if "it results in bodily injury to a person other than the confining person." *Id.* § 3(b)(1)(C).

[11]     The evidence most favorable to the trial court's judgment shows that, when Swift attempted to escape the house through the window, Fleener approached her from behind, grabbed her by the hair and collar, and threw her onto the floor. From this evidence, the trial court, acting as the trier of fact, could reasonably conclude that Fleener knowingly or intentionally confined Swift without her consent.

[12]     As to the element of bodily injury, Swift testified that, when Fleener grabbed her hair and collar, this caused her "a little" pain "on my hairline in the back." Tr. Vol. II p. 17. Our Supreme Court has held that "any degree of physical pain may constitute a bodily injury. . . ." *Bailey v. State*, 979 N.E.2d 133, 142 (Ind. 2012); *see also* Ind. Code § 35-31.5-2-29 ("'Bodily injury' means any impairment of physical condition, including physical pain."). Accordingly, Swift's testimony that Fleener's actions caused her a little pain is sufficient to establish the element of bodily injury.

[13]     Fleener's citation to *McFadden v. State*, 25 N.E.3d 1271 (Ind. Ct. App. 2015), is unavailing. In that case, there was no evidence of confinement beyond the defendant's battery of the victim, which was established by evidence that the defendant "pushed, hit, and kicked [the victim] and pulled his hair." *Id*. at 1274. Nor did the victim testify that he felt confined. *Id*. Thus, there was no evidence independent of the battery that supported the confinement. *Id*.

[14]     We find the present case to be more like *Mickens v. State*, 115 N.E.3d 520 (Ind. Ct. App. 2018). In that case, we rejected the defendant's claim that his

confinement of the victim was merely incidental to the battery, as was the case in *McFadden*. We distinguished the holding in *McFadden* because it was based on the "removal" subsection of the criminal confinement statute that has since been eliminated. *Mickens*, 115 N.E.3d at 524. Instead, as here, the defendant in *Mickens* was charged with "confining" the victim without her consent, not removing her from one place to another. *Id*. For this reason alone, *McFadden* is not controlling.

[15] Moreover, *Mickens* held that there was sufficient evidence of confinement independent of the battery. *Id*. Specifically, the defendant threw a plate at the victim and ordered her to leave, and when she refused, he threw her belongings onto the lawn, dragged her out of the house by her hair, stomped on her leg, grabbed her again, and dragged her back to the front door. *Id*. Relying on this course of conduct rather than the battery alone, the *Mickens* Court concluded the trier of fact could reasonably find that the defendant "substantially interfered with [the victim]'s liberty without her consent." *Id*.

[16] The same is true here. The evidence shows that Fleener confined Swift by grabbing her, preventing her from escaping through the window, and throwing her onto the floor. This conduct went beyond, and did not depend on, the earlier push that formed the basis of the domestic battery charge. Accordingly, we conclude that the State presented sufficient evidence to support Fleener's conviction for criminal confinement resulting in bodily injury, a Level 5 felony.

## II. Double Jeopardy

[17]   Fleener also claims that his convictions for domestic battery and criminal confinement constitute substantive double jeopardy.[2]  This inquiry differs from the one we resolved in Part I.  There, we asked whether the evidence, viewed in the light most favorable to the verdict, was independently sufficient to support each element of confinement.  Here, we ask whether Fleener's convictions for criminal confinement and domestic battery—even though each is adequately supported by sufficient evidence—nonetheless punish him twice for a single criminal transaction.  That question turns on a different analysis.  And, here, the parties agree that the double jeopardy analysis in this case is governed by the three-part test set forth by our Supreme Court in *Wadle v. State*, 151 N.E.3d 227 (Ind. 2020), as modified by *A.W. v. State*, 229 N.E.3d 1060, 1066 (Ind. 2024).  We review claims of double jeopardy de novo.  *See Wadle*, 151 N.E.3d at 237.

### *Wadle Step 1*

[18]   In the first step of the *Wadle* analysis we consider "[i]f either statute clearly permits multiple punishment, whether expressly or by unmistakable implication."  *Id.* at 253.  If so, our "inquiry comes to an end and there is no

---

[2] The State initially claims that Fleener waived his double jeopardy argument by failing to present it to the trial court.  The State correctly notes that the trial court provided Fleener with an opportunity to explain which counts should be vacated on double jeopardy grounds, yet Fleener argued only that Count III, the misdemeanor battery conviction, should be vacated.  We have held, however, that double jeopardy claims can be raised for the first time on appeal, or even by this Court *sua sponte*, because double jeopardy implicates fundamental rights.  *Moore v. State*, 181 N.E.3d 442, 446 (Ind. Ct. App. 2022).  We, therefore, address the merits of Fleener's double jeopardy argument.

violation of substantive double jeopardy." *Id*. If, however, the statutory language is not clear, "then [we] must apply our included-offense statutes to determine whether the charged offenses are the same." *Id*.

[19] Here, both parties agree that there is nothing in the statutes defining criminal confinement and domestic battery that clearly permits multiple punishment. *See* I.C. § 35-42-3-3(a), (b)(1)(C) (defining criminal confinement as a Level 5 felony); Ind. Code §§ 35-42-2-1.3(a)(1), (b)(2) (defining domestic battery as a Level 6 felony).[3] We agree and, therefore, proceed to Step 2.

## *Wadle Step 2*

[20] At Step 2, we ask whether the offenses are included either inherently or "as charged," also known as "factually included." *A.W.*, 229 N.E.3d at 1067. As clarified in *A.W.,* if there are ambiguities in a charging instrument as to whether one offense is factually included in the other, we must construe any such ambiguity in the defendant's favor and "find a presumptive double jeopardy violation at Step 2." *Id*. at 1069. The State can rebut this presumptive double jeopardy violation at Step 3. *Id*.

---

[3] The operative language of the criminal confinement statute provides: "A person who knowingly or intentionally confines another person without the other person's consent commits criminal confinement." Ind. Code § 35-42-3-3(a). The offense is elevated to a Level 5 felony if "it results in bodily injury to a person other than the confining person." *Id*. § 3(b)(1)(C). The operative language of the domestic battery statute provides: "a person who knowingly or intentionally . . . touches a family or household member in a rude, insolent, or angry manner . . . commits domestic battery." Ind. Code § 35-42-2-1.3(a)(1). The offense is elevated to a Level 6 felony if the defendant is "at least eighteen (18) years of age" and the offense is committed "in the physical presence of a child less than sixteen (16) years of age, knowing that the child was present and might be able to see or hear the offense." *Id*. § 1.3(b)(2).

Here, neither party contends that domestic battery is inherently included in criminal confinement or vice versa. We agree. *See* note 3, *supra.* The question then becomes whether the offenses are factually included. As to criminal confinement, the charging information here provided:

> On or about May 23, 2025, [Fleener] did knowingly confine Donnette Lynn Swift without the consent of Donnette Lynn Swift, said act resulting in bodily injury to Donnette Lynn Swift, to-wit: bruising, and/or abrasion, and/or scratch, and/or pain[.]

Appellant's App. Vol. II p. 17. As to the domestic battery, the information provided:

> On or about May 23, 2025, [Fleener], being at least eighteen (18) years of age, did knowingly touch Donnette Lynn Swift, a family or household member, in a rude, insolent, or angry manner and [Fleener] committed said offense in the presence of a child less than 16 years of age, knowing that the child was present and might be able to see or hear the offense[.]

*Id.*

The State concedes that the charging information is ambiguous as to whether the domestic battery offense is a factually included offense of the criminal confinement offense. Based on *A.W.*, we agree. That is, based on the language of the charging information, "it is conceivable" that, while Fleener was confining Swift, he also touched her in a rude, insolent, or angry manner. *See A.W.*, 229 N.E.3d at 1070. We, therefore, presume a double jeopardy violation and proceed to Step 3, where the State may rebut this presumption. *See id.*

*Wadle Step 3*

[23] At Step 3, we consider whether the facts demonstrate that the defendant's actions were "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Wadle*, 151 N.E.3d at 253. If so, the defendant's convictions constitute double jeopardy. *Id.*

[24] The State claims that Fleener committed the domestic battery offense by pushing Swift by the front door, which occurred *before* Fleener confined Swift by dragging her away from the window and throwing her on the floor to prevent her escape. Thus, the State argues, the battery was not part of the same criminal transaction as the confinement.[4]

[25] We observe, however, that during closing argument, the State relied on the same "pushing, pulling and dragging" to establish both confinement and battery. The deputy prosecutor stated during closing argument:

> [I]t was [Fleener's] act in the pushing and the pulling and in the dragging of him confining [Swift] to the living room that caused those injuries to her body. That abrasion and those scratches and then like she said the pain when she was pulled down by her collar.
>
> Along with that, that kind of leads right into the domestic battery charge. There's no question they were a family or household member under the statute. They do have a child together and both admit that they were living together at the time. We do

---

[4] We find the State's reliance on *Boatright v. State*, 759 N.E.2d 1038 (Ind. 2001), and *Hopkins v. State*, 747 N.E.2d 598 (Ind. Ct. App. 2001), to be unavailing, as both of those cases were decided under the *Richardson* actual evidence test, which was abrogated by *Wadle*.

know that the – this act was all done in a rude, insolent or angry manner. There's no way really to pull somebody and push them around the way that he did in a way that is anything other than angry. . . .

Tr. Vol. II p. 86. Thus, the prosecutor did not sufficiently distinguish the conduct supporting each count.

[26] Fleener's acts occurred during the same argument, on the same morning,[5] and at the same house. Fleener's actions were "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Wadle*, 151 N.E.3d at 253. Fleener's convictions for both criminal confinement and domestic battery, therefore, constitute substantive double jeopardy.[6]

[27] We, therefore, reverse Fleener's conviction for the lesser offense of domestic battery, *see Bradshaw v. State*, 239 N.E.3d 864, 869 (Ind. Ct. App. 2024), and remand with instructions that the trial court vacate the conviction and sentence entered on that count.

---

[5] The argument began after Swift returned home after dropping her oldest child off at school. The doorbell camera video, which was admitted into evidence, shows Swift leaving the home at 9:57 a.m.

[6] We find the State's citation to *Brewer v. State*, 241 N.E.3d 19 (Ind. Ct. App. 2024), to be unavailing. In that case, we concluded at Step 2 that neither robbery nor intimidation was an included offense of the other and expressly declined to proceed to Step 3. *Id*. at 26. We then noted that the two offenses would not constitute a single transaction even if we reached Step 3. *Id*. at 26-27. Our discussion of Step 3 was, therefore, dicta. Moreover, the defendant in *Brewer* committed the robbery through one set of acts—entering the victim's camper with a gun, pointing the gun, and striking her—and the intimidation through a distinct, later act—an explicit threat to coerce her into opening a safe, made after a long standoff. In contrast, here, all of Fleener's criminal acts occurred during a short span of time on the same morning, at the same house, and involving the same victim.

## Conclusion

The State presented sufficient evidence to support Fleener's conviction for criminal confinement, a Level 5 felony. Fleener's convictions for both criminal confinement and domestic battery, however, constitute substantive double jeopardy, and we reverse Fleener's conviction for domestic battery and remand with instructions that the trial court vacate the conviction and sentence entered on that count.

Affirmed in part, reversed in part, and remanded.

Weissmann, J., and Foley, J., concur.

ATTORNEY FOR APPELLANT

Willow Thomas
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Andrew M. Sweet
Deputy Attorney General
Indianapolis, Indiana